01

02

03

04

05

06                       UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
07                              AT SEATTLE

08  WADE MOREHOUSE,                    )     CASE NO. C12-5375-MJP-MAT
                                       )
09        Plaintiff,                   )
                                       )
10        v.                           )     REPORT AND RECOMMENDATION
                                       )     RE: SOCIAL SECURITY
11  MICHAEL J. ASTRUE, Commissioner    )     DISABILITY APPEAL
    of Social Security,                )
12                                     )
          Defendant.                   )
13  _____  )

14          Plaintiff Wade Morehouse proceeds through counsel in his appeal of a final decision

15  of the Commissioner of the Social Security Administration (Commissioner).    The

16  Commissioner denied Plaintiff's applications for Supplemental Security Income (SSI) and

17  Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge

18  (ALJ).    Having considered the ALJ's decision, the administrative record (AR), and all

19  memoranda of record, the Court recommends that this matter be AFFIRMED.

20  ///

21  ///

22  ///

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01        **FACTS AND PROCEDURAL HISTORY**

02        Plaintiff was born on XXXX, 1964.[1]   He completed 11th grade, has a GED, and

03   previously worked as a cook.  (AR 229-236.)

04        Plaintiff filed applications for DIB and SSI on January 22, 2008.  (*See* AR 188-193.)

05   Those applications were denied initially and on reconsideration, and Plaintiff timely requested

06   a hearing. (AR 101-104, 116-121, 129-30.)

07        On June 9, 2010, ALJ M.J. Adams held a hearing, taking testimony from Plaintiff and

08   a vocational expert.  (AR 50-90.)   On July 29, 2010, the ALJ issued a decision finding

09   Plaintiff not disabled.  (AR 25-43.)  Plaintiff timely appealed.  The Appeals Council denied

10   Plaintiff's request for review on March 8, 2012 (AR 1-3), making the ALJ's decision the final

11   decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to

12   this Court.

13        **DISCUSSION**

14        The Commissioner follows a five-step sequential evaluation process for determining

15   whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

16   must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff not

17   engaged in substantial gainful activity since April 27, 2004, the alleged onset date.  (AR 27.)

18   At step two, it must be determined whether a claimant suffers from a severe impairment.  The

19   ALJ found Plaintiff's depression, anxiety disorder, right wrist crush injury status post

20   _____

21        [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  deQuervain's release, and migraine headaches to be severe, and Plaintiff's burn injuries to be

02  not severe.  (AR 28-29.)  Step three asks whether a claimant's impairments meet or equal a

03  listed impairment.  The ALJ found that Plaintiff's impairments did not meet or equal the

04  criteria of a listed impairment. (AR 29-30.)

05       If a claimant's impairments do not meet or equal a listing, the Commissioner must

06  assess residual functional capacity (RFC) and determine at step four whether the claimant has

07  demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff capable of

08  performing light work "as defined by 20 C.F.R. 401.1567(b) and 416.967(b)," including the

09  ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to stand, walk, or

10  sit walk (with normal breaks) for a total of about six hours each in an eight-hour workday, and

11  the ability to frequently climb ramps and stairs, balance, stoop, kneel and crouch.  (AR 31.)

12  Plaintiff also has the ability to occasionally crawl and climb ladders, ropes, and scaffolds, and

13  can frequently handle with his right wrist.  Plaintiff should avoid concentrated exposure to

14  extreme heat and hazards (machinery, heights, etc.).  As to mental limitations, the ALJ found

15  that Plaintiff can understand, remember, and carry out simple 2-3 step instructions required of

16  skilled work, and has the "average ability" to perform sustained work activities in an ordinary

17  work setting on a regular and continuing basis within customary tolerances of employers'

18  rules regarding sick leave and absences.  (AR 31.)  Plaintiff can make judgments on simple

19  work-related decisions, respond appropriately to supervision, co-workers, and deal with

20  changes in a stable work environment not dealing with the general public or where the general

21  public is not frequently encountered as an essential element of the work process (i.e.,

22  incidental contact with the general public is not precluded).  (AR 31.)

01        If a claimant demonstrates an inability to perform past relevant work, the burden shifts

02   to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

03   an adjustment to work that exists in significant levels in the national economy.  Considering

04   the Medical-Vocational Guidelines and with the assistance of the vocational expert, the ALJ

05   found Plaintiff capable of performing other jobs, such as fast food worker, cleaner

06   (housekeeping), and garment sorter.  (AR 43.)

07        This Court's review of the ALJ's decision is limited to whether the decision is in

08   accordance with the law and the findings supported by substantial evidence in the record as a

09   whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

10   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

11   reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

12   F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

13   supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

14   F.3d 947, 954 (9th Cir. 2002).

15        Plaintiff argues[2] the ALJ erred by (1) discounting Plaintiff's credibility; (2)

16   discounting the medical opinions of Dr. Thomas Dean, Dr. Jennifer Cheng-Shannon, Dr.

17   _____

18        [2] After listing the specific assignments of error at page one of his Opening Brief, Plaintiff
     devotes approximately half of the remaining pages to a lengthy narrative of the medical opinion

19   evidence before commencing an actual discussion of the issues presented.  The Court has full access to
     the administrative record and all the hearing exhibits.  A lengthy summary of the record by either party

20   serves no useful function, and violates this Court's scheduling order.  (Dkt. 7 at 2 ("**The parties shall
     not include a lengthy recitation of background facts or medical evidence.  Rather, a discussion of
     the relevant facts should be included in the context of specific assignments of error.**") (emphasis

21   in original).)  Further, Plaintiff's counsel is cautioned that all pleadings must conform with Local Rule
     W.D. Wash. CR 10(e)(3), requiring the name of the law firm (if any), mailing address, and telephone

22   number of the attorney or party preparing the pleading to be printed or typed at the right side of the
     bottom of each page.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01 Jeffrey Bremer, Dr. Silverio Arenas, and Dr. Srinivaska Meka, and failing to account for all

02 the limitations identified by State agency consultants; (3) discounting lay witness testimony;

03 and (4) failing to meet the Commissioner's burden at step five.  The Commissioner argues

04 that the ALJ's decision is supported by substantial evidence and should be affirmed.[3]

05 **<u>Plaintiff's Credibility</u>**

06       The ALJ's reasons for discounting the credibility of Plaintiff's self-reported symptoms

07 fall into three categories: (1) inconsistency between Plaintiff's self-report and the medical

08 record; (2) inconsistency in Plaintiff's reporting symptoms, drug use, and work history; and

09 (3) inconsistency between Plaintiff's self-report and Plaintiff's activities.  Plaintiff contends

10 that none of these reasons were clear and convincing.[4]

11 <u>Legal Standards</u>

12       In assessing credibility, an ALJ must first determine whether a claimant presents

13 "objective medical evidence of an underlying impairment 'which could reasonably be

14 expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d

15 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

---

16

17     [3] Although the Commissioner's brief addresses the sufficiency of the ALJ's consideration of Plaintiff's impairments in combination at step three of the sequential evaluation, Plaintiff does not assign error to the ALJ's step-three findings.  *See Paladin Assocs., Inc. v. Montana Power Co.*, 328

18 F.3d 1145, 1164 (9th Cir. 2003) (nothing that courts "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief").

19     [4] Plaintiff also makes a passing reference to the ALJ's duty to develop the record, in his Reply brief.  Dkt. 25 at 1-2.  Plaintiff does not, however, show that any of the evidence in the record was

20 ambiguous or inadequate, but instead implies that because the ALJ identified inconsistencies in the record, the ALJ should have further inquired into those topics.  But it is ambiguity or inadequacy —

21 not inconsistency — that triggers an ALJ's duty to further develop the record.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is

22 triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01   Given presentation of such evidence, and absent evidence of malingering, an ALJ must

02   provide clear and convincing reasons to reject a claimant's testimony.  *Id.*   *See also Vertigan*

03   *v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

04   <u>Inconsistency with the Medical Record</u>

05   The ALJ reasoned that because Plaintiff sought only sporadic treatment for his right

06   arm pain, and did not consistently comply with the recommended treatment for his headaches,

07   those physical complaints were not as debilitating as Plaintiff claimed.  (AR 34.)   As to

08   Plaintiff's mental conditions, the ALJ discounted their severity because Plaintiff's symptoms

09   stabilized on medication and because Plaintiff performed satisfactorily on mental-status

10   examinations.  (AR 34-35.)

11   The ALJ did not, as Plaintiff contends, find that the medical evidence *does not support*

12   Plaintiff's self-report of disabling pain in his right hand and wrist, knees, left shoulder, mid

13   back and head; the ALJ found that the medical record *contradicts* Plaintiff's self-report.

14   Specifically, the ALJ pointed to January 2005 testing revealing moderate loss of range of

15   motion in his hand and wrist, but no loss of sensation, with physical therapy recommended as

16   treatment.  (AR 32 (citing AR 446-47).)  The ALJ also pointed to Plaintiff's failure to pursue

17   physical therapy to the extent recommended, and his failure to report significant hand, wrist,

18   or arm pain when he received medical treatment in February 2006.  (AR 33 (citing AR 438-

19   43).)  The ALJ also identified other testing performed in April 2007 that revealed some wrist

20   tenderness, but normal strength and sensation throughout the extremities.  (AR 33 (citing AR

21   384).)  The ALJ further noted that in September 2007, Plaintiff reported to his primary care

22   physician that his back pain was well-controlled, denied any history of tingling, numbness, or

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 unusual pain in his extremities, and denied all complaints other than headaches.  (AR 33-34

02 (citing AR 531-33).)

03       Regarding Plaintiff's headaches, the ALJ noted that though Dr. Gregory Bell

04 prescribed Depakote for headaches and recommended occipital nerve blocks and cervical

05 paraspinous muscle trigger point injections, Plaintiff did not follow these treatment

06 recommendations.   (AR 33 (citing AR 529).)   Similarly, Dr. Jon Kooiker prescribed

07 Verapamil in August 2008 for Plaintiff after a neurological evaluation, but "there is no

08 indication that the claimant followed through with the prescription."  (AR 34 (citing AR 537-

09 38).)

10       The ALJ also pointed to evidence that Plaintiff reported in July 2005 and again in

11 January 2008 that his mental-health symptoms were well-controlled when he took Prozac, yet

12 reported depression in May 2008 after he discontinued treatment.  (AR 34-35 (citing AR 430,

13 520, 528-29, 530-32).)   He started another course of Prozac in September 2008, but then

14 reported in June 2009 that he was experiencing depression symptoms and had been off Prozac

15 for four months.  (AR 35 (citing AR 548).)

16       The cited evidence does not merely fail to corroborate Plaintiff's self-described

17 symptoms, but instead contradicts them or shows that they can be controlled with treatment,

18 and therefore undermines the credibility of Plaintiff's complaints of disabling symptoms.  *See*

19 *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (holding that

20 an ALJ was entitled to discount a claimant's credibility after identifying specific evidence in

21 the record that undermined the claimant's testimony).  Furthermore, contradiction with the

22 medical record is an appropriate basis for rejecting the claimant's subjective testimony where,

01   as here, the ALJ also identified other legally sufficient reasons for discounting Plaintiff's

02   testimony.  *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)

03   (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  *See also Rollins v.*

04   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be

05   rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

06   medical evidence is still a relevant factor in determining the severity of the claimant's pain

07   and its disabling effects.").

08        <u>Inconsistency in Plaintiff's Report to Medical Providers</u>

09        The ALJ noted inconsistencies in Plaintiff's reporting of drug use and work history to

10   his medical providers.  For example, Plaintiff admitted to a history of alcohol abuse and

11   current marijuana use in April 2007 and June 2008 consultative examinations and at the

12   administrative hearing, but denied current marijuana use at an October 2007 psychological

13   evaluation and in a June 2008 form.  (AR 36-37 (citing AR 382, 389, 422-23, 462, 510).)  The

14   ALJ noted that Plaintiff reported in September 2008 that he had not used cocaine for 20 years

15   or methamphetamine for seven or eight years, which contradicted an April 2006 toxicology

16   screen that was positive for opiates, benzodiazepines, and methamphetamine.  (AR 36-37

17   (citing AR 338-39, 495).)

18        The ALJ further described other inconsistencies in Plaintiff's mental-health records.

19   In September 2007 Plaintiff told his primary care physician that he had never attempted

20   suicide, but reported in July 2008 that he had been suicidal several times and attempted once

21   via overdose.  (AR 37 (citing AR 531).)  In September 2008 he reported that five years earlier

22   he had overdosed on sleep medication, but denied that this was a suicide attempt.  (AR 494.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01          The ALJ also noted that Plaintiff had reported that he could not remember his birthday

02   but could interpret a proverb in April 2007, yet could remember his birthday but not interpret

03   the same proverb in April 2008.  (AR 37 (citing AR 466-469).)

04          Last, the ALJ pointed out discrepancies in the way Plaintiff described the

05   circumstances that caused various symptoms, and how those symptoms affected his ability to

06   work.  (AR 37 (citing AR 201-209, 464-65, 495, 517).)  In April 2008, Plaintiff reported that

07   his depression and anxiety symptoms were caused by his recent divorce from his wife and his

08   new baby with his fiancée.  But in July 2008, Plaintiff reported that his depression was

09   attributable to a 1993 car accident and his 2006 burn injuries, even though Plaintiff's work

10   history shows that he returned to work after the car accident and was able to work as a chef

11   until he injured his hand in 2004.  In September 2008, Plaintiff reported that he had worked as

12   a chef until four years prior, when he could no longer work due to chronic back spasms and

13   carpal tunnel syndrome (with no mention of mental-health symptoms contributing to inability

14   to work).

15          While not all of these inconsistencies may not undermine Plaintiff's credibility —

16   Plaintiff's inability to remember his birthday or interpret a proverb at various points in time,

17   for example, may not reflect inaccurate reporting but may instead reflect untreated mental

18   impairments — the inconsistent reporting of Plaintiff's drug use is a clear and convincing

19   reason to discount Plaintiff's credibility.  Though Plaintiff points to hearing testimony (AR

20   76) to argue that the ALJ misled Plaintiff into believing that his drug use was not relevant to a

21   disability determination, it is not Plaintiff's drug use *per se* that undermines his credibility, it

22   is his inaccurate reporting of his drug use that undermines his veracity.  *See Thomas*, 278 F.3d

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  at 959.

02  <u>Inconsistency Between Plaintiff's Reported Symptoms and Plaintiff's Reported Activities</u>

03

04  The ALJ noted that on several occasions, medical providers observed Plaintiff to have

05  "very dirty" hands or cut and scraped hands, and that Plaintiff explained that he had been

06  using his hands to work on automobiles and dig for rocks.  (AR 38 (citing AR 390, 444,

07  446).)  Though Plaintiff elsewhere claimed limited ability to use his hands due to pain,

08  tingling, and a propensity to drop items (see, *e.g.,* AR 432), his self-described activities

09  undermine the credibility of that complaint.  Accordingly, this is a clear and convincing

10  reason to discount Plaintiff's credibility.

11  In sum, because the ALJ provided multiple clear and convincing reasons to discount

12  Plaintiff's credibility, the Court should affirm the ALJ's adverse credibility determination.

13  **<u>Medical Opinions</u>**

14  Plaintiff contends that the reasons the ALJ provided for discounting the opinions of

15  certain physicians were not specific or legitimate, and that the ALJ emphasized certain

16  evidence over other evidence without acknowledging the context in which the opinions were

17  provided.

18  <u>Legal Standards</u>

19  In general, more weight should be given to the opinion of a treating physician than to a

20  non-treating physician, and more weight to the opinion of an examining physician than to a

21  non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not

22  contradicted by another physician, a treating or examining physician's opinion may be

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  rejected only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d

02  1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion

03  may not be rejected without "'specific and legitimate reasons' supported by substantial

04  evidence in the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499,

05  502 (9th Cir. 1983)).  The ALJ may reject physicians' opinions "by setting out a detailed and

06  thorough summary of the facts and conflicting clinical evidence, stating his interpretation

07  thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing

08  *Magallanes*, 881 F.2d at 751).  Rather than merely stating her conclusions, the ALJ "must set

09  forth [her] own interpretations and explain why they, rather than the doctors', are correct."  *Id.*

10  (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

11  <u>Dr. Dean's Opinions</u>

12      The ALJ summarized Dr. Dean's opinions and explained why he did not assign

13  significant weight to them:

14      In his April 2007 consultative examination, Dr. Dean opined that the claimant
       was without limitation as to the number of hours that he could stand, walk, or
15     sit.  He opined that the claimant could lift and/or carry 10 pounds frequently
       and occasionally secondary to right wrist tendonitis and left shoulder injury,
16     which he stated resulted in decreased range of motion and pain for the claimant
       ([AR 385]).   I do not give significant weight to the lifting and carrying
17     limitations assessed by Dr. Dean for several reasons.  First, he noted only
       mildly decreased range of motion on physical examination, suggesting that the
18     limitation may be based in part on the claimant's subjective reports, which are
       not fully credible.  In addition, Dr. Dean noted that the claimant had "dirt
19     encrusted in both his right and left hand equally"[,] indicated that the claimant
       had been employing his right arm for strenuous activity such as digging with
20     his hands ([AR 385]), [] which is not consistent with significant lifting and
       carrying limitations.  Further, I do not give significant weight to Dr. Dean's
21     conclusion that the claimant's reported photosensitivity would result in visual
       and environmental limitations, or that his depression would further exacerbate
22     his limitations, because the claimant's alleged photosensitivity is subjective

01        and because Dr. Dean did not perform any significant mental status examination testing that would support the existence of any concentration

02        limitations.

03  (AR 38.)  Plaintiff argues that the ALJ should not have discounted Dr. Dean's opinions due to

04  reliance on Plaintiff's self-report, because Dr. Dean did not find Plaintiff's self-report to lack

05  credibility and he supported his opinions with his own observations.  Plaintiff also contends

06  that because Dr. Dean was aware of Plaintiff's dirty hands and yet still opined that Plaintiff

07  had lifting and carrying limitations, the ALJ should not have found any inconsistency.  Lastly,

08  Plaintiff argues that the ALJ erred in discounting Dr. Dean's opinions regarding his visual and

09  environmental limitations, and that the ALJ should have found Plaintiff more limited in that

10  regard.

11        None of Plaintiff's arguments should prevail.  As to the first and third reasons

12  provided by the ALJ — reliance on Plaintiff's self-report and lack of independent testing —

13  Dr. Dean did not provide any independent observations to support his conclusion that Plaintiff

14  suffered from "significant photosensitivity" or that his concentration deficits would

15  exacerbate his limitations. (AR 386.)  Dr. Dean apparently relied on Plaintiff's self-report and

16  his decision to wear sunglasses during the entire evaluation in reaching these conclusions (AR

17  382-83).  As explained *supra*, the ALJ properly discounted the credibility of Plaintiff's self-

18  report.  Because Dr. Dean did not support his opinions regarding photosensitivity and

19  concentration deficits with his own independent observations, the ALJ did not err in

20  discounting that opinion because it presumably relied primarily on Plaintiff's non-credible

21  self-report.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

22        As to the second reason provided by the ALJ — the inconsistency between Plaintiff's

01   use of his hands (as evidenced by dirt encrusted in both of his hands) and Dr. Dean's carrying

02   and lifting restriction to 10 pounds — the ALJ properly found that Dr. Dean's range-of-

03   motion testing (AR 385) revealed only mild limitation and does not support Dr. Dean's more

04   severe restriction to lifting or carrying no more than 10 pounds.   As support for that

05   restriction, Dr. Dean also cited Plaintiff's report of "significant pain" in his right wrist and left

06   shoulder, but as explained in the previous section, the ALJ properly discounted Plaintiff's

07   self-report.   Accordingly, because Dr. Dean's independent testing does not support his

08   opinion regarding the severe lifting/carrying restriction, the ALJ did not err in discounting Dr.

09   Dean's opinion to the extent that it relied on Plaintiff's non-credible self-report.   *See*

10   *Tommasetti*, 533 F.3d at 1041.

11         Accordingly, the Court should conclude that the ALJ provided specific and legitimate

12   reasons to discount Dr. Dean's opinions regarding Plaintiff's ability to lift and carry, and

13   Plaintiff's limitations regarding photosensitivity and concentration.

14         <u>Dr. Cheng-Shannon's Opinions</u>

15         The ALJ declined to give significant weight to the opinions of consultative examiner

16   Jennifer Cheng-Shannon, M.D.:

17         In April 2007, consultative examiner Dr. Cheng-Shannon stated that the
          claimant presented with deficits in cognitive functioning, including short[-]
18        and long-term memory, working memory, and other executive functioning
          skills most likely secondary to his head injury and possibly his alcohol use.
19        She opined that these "greatly impacted his ability to function."   Dr. Cheng-
          Shannon also noted the claimant's "significant mood symptoms" but stated
20        that the exact nature was unclear, and noted that his current substance abuse
          made his symptoms difficult to fully assess.   Dr. Cheng-Shannon opined that
21        the claimant would likely have difficulty performing even simple and
          repetitive tasks, given his immediate memory difficulties and difficulty with a
22        three-step command.   She stated that the claimant would most likely have

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01   difficulty performing work activities on a consistent basis given the memory
     deficits shown on examination.  I do not find this opinion persuasive for
02   several reasons.  First, records show that the claimant did not receive mental
     health treatment until September 2007, after which he reported significant
03   improvement in his symptoms with medication ([AR 516-536]).  Second, the
     doctor's opinion was based entirely on the claimant's subjective reports and
04   presentation, which are not fully credible, as discussed above.  In addition, the
     claimant's performance on mental status examination was inconsistent with
05   other exams found in the record.  Moreover, Dr. Cheng-Shannon assigned a
     global assessment of functioning (GAF) score of 60, indicating at most
06   moderate symptoms or moderate difficulty in social or occupational
     functioning, which is not consistent with her opinion. For all of these reasons,
07   this opinion is not given significant weight.

08   (AR 39.)  Plaintiff contends that, contrary to the ALJ's findings, Dr. Cheng-Shannon did

09   support her opinion with independent objective observations (and did not simply rely on

10   Plaintiff's self-report) and the fact that her mental status examination departs from other

11   examination results does not undermine the reliability of Dr. Cheng-Shannon's examination.

12        Plaintiff's arguments do not address the ALJ's first reason for discounting Dr. Cheng-

13   Shannon's opinions about Plaintiff's mental functioning: Plaintiff reported significant

14   improvement after September 2007, once he began mental-health treatment.  (AR 39 (citing

15   AR 516-36).)  Impairments that can be controlled via medication are not disabling, and thus

16   the ALJ did not err in finding that Plaintiff's subsequent improvement rendered Dr. Cheng-

17   Shannon's opinions less persuasive.  *See Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d

18   1001, 1006 (9th Cir. 2006).

19        Plaintiff also fails to address the inconsistency between Dr. Cheng-Shannon's

20   assignation of a GAF score of 60 and her opinions that Plaintiff would have difficulty

21   performing even simple and repetitive tasks on a consistent basis.  Such an internal

22   inconsistency is a valid reason to discount a medical opinion.  *See Morgan*, 169 F.3d at 603.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01        Accordingly, because the ALJ provided at least two valid reasons to discount Dr.

02   Cheng-Shannon's opinions, the Plaintiff has not established error.

03        <u>Dr. Bremer's Opinions</u>

04        The ALJ declined to give significant weight to the opinions of Jeffrey Bremer, Ph.D.:

05        In his October 2007 DSHS evaluation, Dr. Bremer assessed moderate
          limitations in the claimant's ability to understand, remember, and follow

06        complex instructions; to learn new tasks; and mild to moderate limitations in
          his ability to perform routine tasks.  As to social functioning, Dr. Bremer

07        assessed marked limitations in the claimant's ability to relate appropriately to
          co-workers and supervisors, marked to severe limitations in his ability to

08        control physical or motor movements and maintain appropriate behavior, and
          severe limitations in his ability to interact appropriately in public contacts and

09        to respond appropriately to and tolerate the pressure and expectations of a
          normal work setting ([AR 423]).  These limitations are not entirely persuasive

10        and are not given significant weight for several reasons.  First, the cognitive
          limitations assessed were based primarily on the claimant's subjective reports,

11        as evidenced by the support cited by Dr. Bremer that the claimant reported
          feeling "lost with poor memory, attention, and concentration."  Although the

12        mental status examination revealed some difficulty with serial seven
          subtractions and recall, findings are consistent with an ability to perform

13        simple, repetitive tasks ([AR 425]).  Dr. Bremer's report does not contain
          adequate support for the social limitations he assessed, particularly when

14        considered in connection with the record as a whole, which documents the
          claimant's repeatedly appropriately interpersonal interactions, indicating that

15        the limitations were based largely on the claimant's subjective reports, which
          are not fully credible for the reasons discussed above.

16

17   (AR 39-40.)  Plaintiff argues that the ALJ erred in discounting Dr. Bremer's opinions to the

18   extent that they relied on Plaintiff's self-report, and that Dr. Bremer's opinions are not

19   contradicted by "the record as a whole."

20        While a general reference to contradiction in "the record as a whole" may not be

21   sufficiently specific to justify discounting Dr. Bremer's opinions, the lack of independent

22   corroboration in Dr. Bremer's evaluation notes does constitute a valid reason to do so.  All of

01   the evaluation notes supporting the "marked" and "severe" ratings Dr. Bremer assigned as to

02   Plaintiff's social functioning merely record Plaintiff's self-report: "Highly reclusive.  Poor

03   stress response.  Highly fearful and avoidant.  Many specific 'triggers' relating to traumatic

04   past." (AR 423.)  The notes supporting the opinions as to Plaintiff's cognitive functioning are

05   no more independent or objective: "Reports feeling 'lost' with poor memory, attention and

06   concentration."  (AR 423.)  Because the ALJ properly discounted Plaintiff's credibility, as

07   explained above, Dr. Bremer's opinions are properly discounted to the extent they rely on

08   Plaintiff's self-report because they are not supported by his independent observations.  *See*

09   *Tommasetti*, 533 F.3d at 1041.

10       Dr. Arenas's Opinions

11       The ALJ declined to give significant weight to the opinions of consultative examiner

12   Silverio Arenas, Ph.D.:

13       Consultative examiner Dr. Arenas opined that the claimant's abilities to reason
        and understand, attend/concentrate, remember, pace, persist, and to tolerate

14       stress were all "adequately functional relative to the presenting problems,
        within his present limited/curtailed interactive environment, but would be

15       dysfunctional outside of that, as in any competitive work situation."  Dr.
        Arenas assigned a GAF score of 50, indicating serious symptoms or serious

16       difficulty in social or occupational functioning ([AR 489]).  After considering
        the entire record, I decline to give Dr. Arenas' opinion significant weight for

17       several reasons.  First, as noted above, the claimant's reports to Dr. Arenas
        were inconsistent with others found in the record, which renders his subjective

18       reports less reliable.  Second, there are not longitudinal records to support the
        limitations assessed by Dr. Arenas.  In addition, mental status examination

19       findings, while consistent with the ability to perform simple, routine work, do
        not support the extent of the limitations assessed.   Given the lack of

20       corroborating findings, it appears that Dr. Arenas relied on the claimant's
        subjective reports, which render the assessed limitations less persuasive.

21

22   (AR 40-41.)  Plaintiff contends that the ALJ erred in finding that Dr. Arenas's opinions were

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01 based on Plaintiff's non-credible self-report and that they were inconsistent with other

02 medical opinions.

03        To some degree, Dr. Arenas's evaluation reflects Plaintiff's self-report, such as the

04 description of Plaintiff's mental-health history and daily activities. (AR 485, 87-88.)   As

05 explained above, because the ALJ properly discounted Plaintiff's credibility, Dr. Arenas's

06 opinions are properly discounted to the extent they rely on Plaintiff's self-report. *See*

07 *Tommasetti*, 533 F.3d at 1041.

08        And to the extent that Dr. Arenas opined that Plaintiff's depression and anxiety

09 symptoms were disabling, those opinions are contradicted by treatment notes showing that

10 those symptoms were well-controlled with Prozac but sometimes remained untreated. *See,*

11 *e.g.*, AR 520.   Dr. Arenas's mental status examination itself revealed adequate judgment,

12 abstraction, remote memory, attitude, thought content, and thought flow.  (AR 486-87.)  To

13 the extent that it also revealed some memory deficits, it was not necessarily inconsistent with

14 the ALJ's assessment that Plaintiff was capable of completing simple tasks. *Compare* AR

15 489 *with* AR 31.  Thus, Plaintiff has not shown that the ALJ erred in discounting Dr. Arenas's

16 opinions.

17        Dr. Meka's Opinions

18        The ALJ assigned "very little weight" to the December 2007 opinions of Plaintiff's

19 primary care physician, Srinivasa Meka, M.D.:

20        Primary care physician Dr. Meka completed a DSHS evaluation in December
        2007 in which he opined that the claimant's chronic back pain, headaches, and
21        depression rendered him "severely limited" ([AR 523]).  This assessment is
        given very little weight for several reasons. First, "severely limited" is defined
22        as "unable to lift at least two pounds or unable to stand and/or walk" ([AR

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01   523]).  There is simply no support for such severe limitations, and Dr. Meka's
     assessment is so extreme as to render it implausible.  Second, Dr. Meka's
02   treatment records do not contain any objective support for significant
     limitations.  As noted above, the claimant told Dr. Meka that he had back pain
03   in the past that was well controlled, and failed to report any upper extremity
     problems; the record fails to document any significant back impairment.
04   Finally, Dr. Meka is a primary care physician, and as such, is not qualified to
     opine regarding the claimant's psychiatric functioning.  For all these reasons,
05   this unsupported and inconsistent opinion is given very little weight.

06   (AR 39.)  Plaintiff argues that Dr. Meka, as a primary care physician, was qualified to assess

07   and treat both physical and mental disorders, and that, contrary to the ALJ's decision, the

08   medical record is replete with references to Plaintiff's depression symptoms.

09          Dr. Meka's qualifications may not have been an entirely proper reason to discount his

10   opinions regarding Plaintiff's mental disorders (see *Sprague v. Bowen*, 812 F.2d 1226, 1232

11   (9th Cir. 1987)), but the contradictory evidence in Dr. Meka's treatment records is a specific

12   and legitimate reason to do so.  For example, Dr. Meka noted that Plaintiff's depression was

13   "well controlled" by Prozac in the past and he prescribed the medication again in September

14   2007.  (AR 531-32.)  Dr. Meka's evaluation itself notes that Plaintiff receives "moderate

15   relief" on Prozac, and yet Dr. Meka opined that Plaintiff's depression was "severe."  (AR

16   522-23.)  Plaintiff also visited Dr. Meka multiple times reporting no back pain (AR 525-30) or

17   "well-controlled" back pain (AR 531), and yet Dr. Meka opined that Plaintiff experienced

18   "marked" back pain (AR 523).  Because Dr. Meka's treatment records contradict his extreme

19   opinions about Plaintiff's ability to function, the ALJ properly discounted Dr. Meka's

20   opinions.  *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)

21   (holding that an ALJ may discredit a medical opinion that is, *inter alia*, unsupported by

22   objective medical findings).

01         <u>State Agency Consultants' Opinions Regarding Plaintiff's Ability to Handle Stress</u>

02         The ALJ gave "significant weight" to the opinions of the State agency psychologist

03 consultants, as quoted in relevant part:

04         As to the claimant's mental functioning, I have given significant weight to the opinions of State agency psychologist consultants who found that the claimant

05         . . . would do best with the reduced stress of a predictable routine ([AR 403-406, 466-469, 493]).  The State agency assessments are consistent with the

06         record considered as a whole, including treatment records and the claimant's documented activities; therefore, they are given significant weight.

07

08 (AR 39.)  Plaintiff contends that even though the ALJ purported to give significant weight to

09 the psychological consultants' opinion that Plaintiff had limitations in handling stress, the

10 ALJ's RFC assessment does not account for any such limitations.

11         As the Commissioner contends, however, the ALJ's RFC assessment does include a

12 number of limitations that reduce Plaintiff's stress, such as the limitation to simple

13 instructions and only incidental contact with the public.  Furthermore, despite the agency

14 consultants' opinions about how Plaintiff would "do best" with reduced stress, the consultants

15 nonetheless found Plaintiff capable of performing simple tasks.  Because the ALJ's RFC

16 assessment is consistent with the agency consultants' opinions, Plaintiff has failed to allege

17 error.  *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

18         **<u>Lay Witness Evidence</u>**

19         The record contains a May 2010 written statement from Plaintiff's then-girlfriend Erin

20 Backa.  (AR 300.)  Ms. Backa describes Plaintiff's headaches, right wrist pain, difficulty

21 concentrating, and social limitations.  The ALJ considered Ms. Backa's statement, but found

22 that it was not probative as to disability because it relied on Plaintiff's complaints and because

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01   it could not "outweigh the analysis of the objective medical findings, opinion evidence, and

02   the claimant's overall functional abilities." (AR 41.) Plaintiff contends these reasons are not

03   germane.

04        Legal Standards

05        Lay witness testimony as to a claimant's symptoms or how an impairment affects

06   ability to work is competent evidence and cannot be disregarded without comment. *Van*

07   *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of

08   lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89

09   (9th Cir. 1996) (finding rejection of testimony of family members because, *inter alia*, they

10   were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the

11   testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane

12   to each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

13   1993)).

14        However, the failure to disregard lay testimony without comment may be deemed

15   harmless. An error is harmless where it is "'inconsequential to the ultimate nondisability

16   determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting *Stout v.*

17   *Comm'r, Social Sec. Admin.*, 454 F.3d 1050 1055 (9th Cir. 2006)). As recently held by the

18   Ninth Circuit, "'an ALJ's failure to comment upon lay witness testimony is harmless where

19   'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also

20   discredits [the laywitness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549,

21   560 (8th Cir. 2011); also describing harmless error as occurring where an "ALJ's well-

22   supported reasons for rejecting the claimant's testimony apply equally well to the lay witness

01    testimony[.]")

02        Ms. Backa's Statement

03        Though Plaintiff contends that Ms. Backa's statement describes her own observations,

04    and thus should not be discounted for reliance on Plaintiff's self-report, it was reasonable for

05    the ALJ to find that Ms. Backa's statement was not particularly relevant, in light of Plaintiff's

06    failure to follow treatment recommendations and the medical testing showing that Plaintiff's

07    wrist symptoms were not as severe as Plaintiff described.  Those reasons, which the ALJ

08    stated in discounting Plaintiff's credibility, are germane to Ms. Backa's statement as well.

09        The ALJ's other statement, regarding the relative weight of lay testimony and medical

10    evidence, is superfluous to his analysis and not a germane reason to discount Ms. Backa's

11    statement.  As Plaintiff notes, even he does not "expect Ms. Backa's testimony to outweigh

12    any other evidence. He expected it to be considered along with the other evidence."  Dkt. 19

13    at 23.  But that is precisely what the ALJ did: he explicitly stated that he "considered" Ms.

14    Backa's statement, and ultimately found it to be of less value for the germane reasons

15    explained in the previous paragraph.  Because the ALJ explicitly considered and provided a

16    valid reason to discount Ms. Backa's statement, the ALJ did not err.

17                                    Step Five

18        Plaintiff contends that the ALJ's step-five findings are not supported by substantial

19    evidence, but his argument merely reiterates arguments raised and rejected *supra* (that the

20    ALJ improperly rejected medical opinions).  *See* Dkt. 19 at 23; Dkt. 23 at 21.  Accordingly,

21    Plaintiff failed to establish error at step five.

22    / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -21

01
## <u>CONCLUSION</u>

02
For the reasons set forth above, this matter should be AFFIRMED.

03
DATED this <u>13th</u> day of November, 2012.

04

05
_____
Mary Alice Theiler

06
United States Magistrate Judge

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22